**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DESTINAY O.,** ) | |
| ) | **No. 22 C 798** |
| **Plaintiff,** ) | |
| ) | **Magistrate Judge M. David Weisman** |
| **v.** ) | |
| ) | |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff, Destinay O., appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court affirms the Acting Commissioner's decision.

**Background**

On October 8, 2019, plaintiff filed an application for benefits alleging a disability onset date of December 31, 2014. (R. 164-167). Following a hearing before Administrative Law Judge Laurie Wardell (the "ALJ") on April 30, 2021, the ALJ rendered an unfavorable decision. (R. 10). The Appeals Council declined review (R. 5), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

**Discussion**

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," i.e., " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2014. (R. 15.) At step two, the ALJ determined that plaintiff had the severe impairments of "mood disorder; schizophrenia; and posttraumatic stress disorder." (R. 16.) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. 16.)

At step four, the ALJ found that plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following limitations: "simple, routine and repetitive tasks; simple workplace decisions; occasional changes; no tandem tasks; no public contact, but occasional contact with supervisors and coworkers; no production rate pace and no hourly quotas, but can meet end of day goals; and needs a break of 1-2 minutes an hour to refocus while at work station." (R. 17).

Plaintiff raises three points of contention on appeal. First, plaintiff contends that the ALJ's assessment of opinion evidence did not comport with 20 C.F.R. § 404.1520(c). Second, plaintiff contends that the ALJ's RFC assessment was unsupported by substantial evidence. Third and finally, plaintiff contends that the ALJ's symptom evaluation was unsupported by substantial evidence. Accordingly, plaintiff argues that the Court must reverse and remand the ALJ's decision. We disagree and explain below.

A. The ALJ's Assessment of Opinion Evidence Complied with 20 C.F.R. § 404.1520(c).

20 C.F.R. § 404.1520(c) provides in relevant part: "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency. We will articulate how we considered the medical opinions and prior administrative findings in your claim." 20 C.F.R. § 404.1520c(c)(1)-(5). Plaintiff primarily disputes the ALJ's consideration of the opinion of Dr. Livas.[1] Relevant here, Dr. Livas opined that plaintiff's symptoms would interfere with the attention and concentration needed to perform even simple work tasks for 16-20% of the workday. (R. 559). The ALJ rejected that opinion because it was not consistent with and supported by the record. (R.

---

[1] As the parties note in their briefing, the ALJ mistakenly refers to Dr. Livas as "Dr. Haas" in her written decision (*see, e.g.*, R. 19). Neither party claims this mistake is a basis for remand. Thus, we need not address the mistake.

19). Plaintiff argues this conclusion was erroneous and that the ALJ did not consider all relevant evidence when evaluating Dr. Livas's opinion.

We find that the ALJ properly evaluated the opinion for supportability and consistency, in accordance with 20 C.F.R. § 404.1520c(c)(1)-(5). For example, the ALJ determined that Dr. Livas's opinion as to off task time was inconsistent with other medical evidence in the record, including Dr. Livas's additional finding that plaintiff had only mild to moderate limitation in the paragraph B criteria.[2] (R.19, citing 559). Plaintiff also cites to multiple instances in the record where plaintiff demonstrated symptoms of mental health disturbances, arguing that such medical evidence supports Dr. Livas's opinion as to off task time and asserting that the ALJ failed to consider such evidence. However, the ALJ acknowledged these symptoms but noted that they coincided with times where the plaintiff was not properly medicated. (R. 18-19). Indeed, the ALJ determined that the record demonstrated a proper regimen of medication rendered the plaintiff "stable,"[3] such that she was free from symptoms and did not require much medical treatment outside of medication refills. (R. 18-19, citing, *e.g.*, 337,447, 464, 476, 566, 583). Thus, contrary to plaintiff's assertions, the ALJ considered relevant evidence that was unfavorable to her conclusion. And she stated a reasonable basis for discounting the unfavorable evidence.

---

[2] The paragraph B criteria are four areas of functioning an ALJ must assess to determine the severity of claimant's mental impairments. They are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. See https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (last visited Feb. 08, 2023).

[3] Plaintiff takes issue with the ALJ's reliance on the term "stable." While Plaintiff's explanation in her briefing regarding the various contexts and meanings of the word "stable" is well-taken, her argument still fails to undercut the ALJ's conclusion as to plaintiff's ability to work while adhering to a proper course of medication. Indeed, the ALJ cites to record evidence showing that when the plaintiff is properly medicated, she does not experience hallucinations, frequent crying, hearing voices, or feeling suicidal. Thus, a reasonable application of the term "stable" in this context is that, when properly medicated, the plaintiff's mental state is stabilized to a reasonable degree of normalcy (i.e., free from the aforementioned symptoms). (R.16 citing 32-24; 38-39). Plaintiff similarly argues that stability says little about impairment severity, because it simply means that an impairment is not getting better or worse. However, as previously stated, the medical evidence in the record supports a finding that, when properly medicated, Plaintiff's impairments are not nearly as severe as they otherwise could be.

Plaintiff also argues that the ALJ could not discount Dr. Livas's opinion because the ALJ is prohibited from rendering a "medical conclusion." However, plaintiff fails to explain how the ALJ's evaluation of a medical opinion constitutes an impermissible "medical conclusion." As we understand it, the ALJ was not rendering medical *conclusions* but, rather, was *evaluating* a medical opinion in light of the record before her. In fact, it is the ALJ's obligation to conduct such an evaluation, and we see no basis for determining that the conclusions she reached were tantamount to "playing doctor." C.f. *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) (ALJ improperly concluded that a lack of an insulin prescription indicated that the claimant was not experiencing significant health problems); *Wilder v. Chater*, 64 F. 3d 335, 335-337 (7th Cir. 1995) (ALJ improperly disregarded the *only* medical opinion in the record concerning the claimant's depression diagnosis) (emphasis added); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018), *amended on reh'g* (Aug. 30, 2018) (ALJ improperly relied on his own interpretation of the claimant's MRI).

In this case, the ALJ simply analyzed Dr. Livas's opinion regarding off task time in light of the record before her, finding that the opinion was inconsistent and unsupported by the record. Accordingly, the ALJ did not "play doctor," but rather objectively evaluated the persuasiveness of the medical opinion at issue. The regulation which plaintiff cites expressly contemplates such an evaluation. Plaintiff's argument here is without merit.

### B. The ALJ's RFC Assessment was Supported by Substantial Evidence

Plaintiff next contends that the ALJ's RFC assessment was not supported by substantial evidence. Plaintiff argues that the ALJ failed to incorporate certain findings of Drs. Gonzales and Williamson (the reviewing psychologists) into the RFC, even though she generally found those doctors' opinions to be persuasive. Plaintiff misses the mark here. As an initial matter, the

ALJ is not bound by every opinion of a medical source that she generally finds credible when determining the plaintiff's RFC. Indeed, it is unambiguously the responsibility of the ALJ to determine a claimant's RFC. 20 C.F.R. § 404.1546(c); *Fanta*, 848 F. App'x at 658-59 (citing 20 C.F.R. § 404.1527(d)(2)). In that role, the ALJ must consider the entire record, including objective medical evidence; she need not simply adopt components of medical opinions, which only constitute part of the record. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see also* 20 C.F.R. § 404.1527(d)(2) (independent evaluation of the record is ALJ's express duty); *Fanta*, 848 F. App'x at 658 (same). Moreover, the ALJ articulated her reasoning for not incorporating all aspects of Drs. Gonzales' and Williamson's findings into the RFC. For instance, in not adopting the opinion that plaintiff would need assistance setting individual work goals, the ALJ noted that plaintiff had worked part time as a hair stylist during the relevant time period. (R. 18, citing 30-32; 174, 189). The ALJ reasonably determined that the individualized nature of hair styling work was inconsistent with the recommendation that plaintiff would need assistance setting individual work goals. (R. 19).

Plaintiff also complains that the ALJ's inclusion of a one-to-two minute break per hour limitation within the RFC was improper, because the amount of time prescribed by the RFC was not directly quantified by a medical source. However, as noted by the ALJ, the inclusion of the hourly break-periods was tied to Drs. Gonzales and Williamson's recommendation that plaintiff had the concentration necessary for one-to-two-hour work intervals with regular breaks. (R. 19 citing 46-56; 76-83). Plaintiff's citation to *Lanigan v. Berryhill* in support of her proposition is unavailing. There, the Seventh Circuit held that the ALJ failed to build a logical bridge between a limitation in the RFC that the claimant would be off-task no more than 10% of the work day and the record in the case. 865 F.3d 558, 563 (7th Cir. 2017). However, in *Lanigan*, there was

evidence in the record expressly demonstrating that the claimant was taking unscheduled breaks—up to 20 minutes—three to five times during his five-hour work shifts. *Id*. That evidence indicated a likelihood that the claimant would be off-task more than 10% of a typical work day, making the ALJ's RFC finding illogical. *Id*.

In contrast, here, there is no such contradictory evidence in the record. Plaintiff has been unemployed during the relevant time period except for occasional self-employment as a hair stylist, and it is unclear from the record how often plaintiff was off-task during her employment as a hair stylist. The evidentiary record in *Lanigan* is therefore significantly different than what we have here. Accordingly, we find that the ALJ built a logical bridge from the medical opinions of Drs. Gonzales and Williamson regarding off-task time to the RFC's inclusion of one-to-two-minute breaks per hour. To the extent that plaintiff complains the RFC still insufficiently addressed plaintiff's concentration, persistence, and pace limitations, we note that in addition to allowing short breaks every hour to refocus, the RFC also addressed these issues by limiting plaintiff to simple, routine, and repetitive tasks. (R. 17). Also, the RFC addressed these limitations by eliminating work with production rate pace or hourly quotas. *Id*.

Lastly, plaintiff argues that the ALJ implicitly found that plaintiff would be off task more than 10 percent of the workday because the ALJ posed a hypothetical question to the vocational expert regarding that limitation. Thus, according to plaintiff, the ALJ improperly excluded this limitation from the RFC. However, the 10 percent hypothetical was posed to the vocational examiner by the ALJ as the third and final hypothetical in a series of hypotheticals. (R. 44). Notably, the ALJ's second hypothetical included the short break period limitation (one or two minutes an hour to refocus while at the workstation) that was ultimately included in the RFC—and the vocational examiner determined that there were available jobs in response. *Id*. Thus, it is

more than reasonable to infer that the ALJ found the plaintiff to mirror the limitations of hypothetical claimant # 2, not hypothetical claimant # 3, because the ALJ included the short break limitation within the RFC and not the 10 percent off-task time limitation. (R. 18). Indeed, only where an ALJ finds that a claimant actually has a limitation must she incorporate the vocational expert's testimony regarding that limitation into her decision. *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). Because the ALJ did not find that plaintiff would be off task more than 10 percent of the workday, the ALJ was not required to include that limitation in the RFC.

C.  The ALJ's Symptom Evaluation was Supported by Substantial Evidence.

Plaintiff argues that the ALJ's symptom evaluation was not supported by substantial evidence. As an initial matter, plaintiff argues that her symptoms were not simply the result of noncompliance with her medication regimen. However, the ALJ recognized that plaintiff's symptoms were not solely due to non-compliance with medication. Rather, the ALJ simply noted that the symptoms were significantly improved when plaintiff adhered to her medication regimen. (R. 19).

Plaintiff also asserts that the ALJ was not permitted to infer from part-time work that her symptoms were not as severe as alleged, and that plaintiff's everyday activities were not inconsistent with her allegations. However, in finding that plaintiff overstated the limiting effects of her symptoms, the ALJ noted that plaintiff's allegations of symptom severity and limiting effects were inconsistent with record evidence, which showed that plaintiff had the ability to complete daily living activities such as taking public transportation, and cleaning and folding clothes. (R. 18 citing R. 34-37, R198). Additionally, ALJs are tasked with evaluating whether subjective allegations are consistent with everyday activities, objective medical evidence, and

other record evidence.  *See* 20 C.F.R. § 404.1529(c)(3)(i), (4) (ALJ evaluates claimant's subjective allegations based on their consistency with everyday activities and objective medical and other evidence); *see also Green v. Saul*, 781 F. App'x 522, 526 (7th Cir. 2019) ("ALJ's are tasked with . . . assessing whether a claimant is exaggerating the effects of her impairments, and reviewing daily-living activities is an important part of that evaluation."); *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (ALJ properly discounted claimant's allegations based on his daily activities, including part-time work); *Shumaker v. Colvin*, 632 F. App'x 861, 866 (7th Cir. 2015) (ALJ does not impermissibly equate everyday activities with work by finding that they belie plaintiff's professed limitations).

In this case, the ALJ reasonably determined that plaintiff's ability to complete everyday activities, and engage in self-employment, undercut her subjective allegations of debilitating impairment. Specifically, the ALJ found that plaintiff's self-employment as a hair stylist demonstrated a fair ability to concentrate on a task, an ability to interact with others, and some ability to adapt to different circumstances. (R. 16 citing R. 30-32; R.174, R.189). Further, the ALJ cited to record evidence showing plaintiff's ability to cohabitate and maintain a good relationship with her brother, socialize with her sisters, use public transportation, and do household chores, as evidence contradicting plaintiff's statements regarding symptom severity and limiting effects. (R. 16; R18 citing the same).

In summary, the ALJ's evaluation of plaintiff's subjective allegations was supported by substantial evidence.

**Conclusion**

For the reasons set forth above, the Court affirms the Acting Commissioner's decision, grants the Acting Commissioner's motion for summary judgment [14], denies the plaintiff's motion for summary judgment [10], and terminates this case.

**SO ORDERED.**                                **ENTERED:**

**DATED: 3/29/2023**

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**